Allen *v.* Robinson.

SAME TERM.    *Before the same Justices.*

ALLEN and others *vs.* ROBINSON and others.

The fact that the parties to a special agreement requiring the delivery, by one party, each month, of a specified number of stoves, and a monthly settlement, and payment therefor by the other, have gone on for several months, and made monthly settlements, without either party's having strictly complied with the terms of the agreement, furnishes evidence that both parties have waived a literal performance of the contract.

And where one of the parties to such an agreement had settled with the other party, and paid him for all the stoves made and delivered up to a certain time; *Held,* that he could not be excused from paying for stoves received on the contract, after that day, on account of any previous default of the other party.

MOTION to set aside report of referees.   On the 17th of June, 1846, the plaintiffs made a special contract, by which they agreed to make and cast for the defendants four hundred stoves, between the first day of July and the first day of January then next, to be delivered at Troy, at 3¼ cents per pound.   The defendants agreed that they would, on the first day of each month, settle with and pay the plaintiffs in cash and notes, what should then be due to them.   The defendants agreed that they would furnish and deliver to the plaintiffs all the necessary patterns in good order, and one set of follow boards at their own cost, to enable the plaintiffs to make the stoves; and on or before the first day of each month

Allen v. Robinson.

request and specify the size and number of stoves to be made during such month, but they were to receive at least sixty-six in each month; and the plaintiffs were not to be compelled to deliver of the four hundred stoves more than sixty-six per month. But if the defendants gave one month's notice to that effect, the plaintiffs were to make any number of additional stoves between said four hundred and one thousand. That the plaintiffs would return to the defendants, after the expiration of the contract, all the patterns in good order, and the defendants were to furnish what flasks and follow boards they had, for which the plaintiffs were to allow their actual value; and the defendants were at the end of the year to take and pay for all the flasks and follow boards which the plaintiffs might make for the purpose of manfacturing said stoves. On the first days of August, September, October, November and December, the defendants did settle with and pay the plaintiffs as provided for in the agreement, although in no one month had sixty-six stoves been made and delivered. In December, 1846, the plaintiffs made and delivered to the defendants fifty-four stoves, which at the contract price were worth $526,42, and in January, 1847, the plaintiffs delivered stoves which at the same price were worth $19,48, making $545,91. For this sum the referees to whom the cause was referred made a report in favor of the plaintiffs; and the defendants now moved to set it aside, on the ground that the stoves were made and delivered under a special contract, which had not been fully performed by the plaintiffs nor rescinded by the defendants. The plaintiffs insisted that the defendants first violated the special contract, by neglecting to furnish and deliver to the plaintiffs all the necessary patterns and one set of follow boards, to enable the plaintiffs to make the stoves; and that the fact of both parties having gone on from July to the first of December inclusive, and made the monthly settlements provided in the agreement, without either party's having strictly complied with the terms of the agreement, furnished evidence that both parties had waived a literal performance of the agreement.

Allen *v.* Robinson.

*E. F. Bullard,* for the plaintiffs.

*S. G. Huntington,* for the defendants.

*By the Court,* CADY, P. J. Whether the defendants had neglected to furnish all the necessary patterns in good order, and whether both parties had departed from the agreement, were questions of fact for the consideration of the referees; and as their report is according to the justice and equity of the case, it is not to be disturbed; unless they have obviously violated some well settled rule of law. The defendants have received from the plaintiffs stoves of the value of $545,91, for which they have not paid a cent. And why should they be permitted to retain the stoves and not be obliged to pay for them? The plaintiffs did not make and deliver to the defendants sixty-six stoves per month from the first of July, 1846, to the first of January, 1847; but as the defendants settled with and paid the plaintiffs for all the stoves which were made and delivered on or before the first day of December, 1846, they cannot be allowed to refuse to pay for the stoves which they received after that day, on account of any previous default of the plaintiffs. The plaintiffs were not bound to make and deliver to the defendants any number of stoves, unless the defendants did on or before the first day of that month request and specify the size and number of stoves to be made during that month. There is no evidence in the case that the defendants, on or before the first day of December, 1846, gave the plaintiffs notice of the size and number of stoves to be made in that month. This was a condition precedent, to be performed by the defendants before the plaintiffs were bound to make and deliver a stove. The plaintiffs had a right to insist that the defendants should receive at least sixty-six stoves per month; but they were not bound to make and deliver any more than the defendants requested. As to the month of December, 1846, there is no default on the part of the plaintiffs proved, and no default is to be presumed, in order to work a forfeiture of all the stoves delivered in that month. On the first of September, 1846, the defendants wrote and put

in the post office at Troy, a notice addressed to the plaintiffs, that they should want, upon their contract, within that month, two hundred and forty-one stoves. That number was not made and delivered in that month ; nor were the plaintiffs obliged to comply with such a request. When the defendants wanted more than sixty-six in a month, they were to give a month's notice. This was not such a notice. But another answer has already been given. The defendants accepted and paid for the number made in September, 1846. Another ground of forfeiture has been urged. That the plaintiffs did not, on the first day of January, 1847, redeliver to the defendants the patterns which they had received from them. The performance of the plaintiffs' agreement to return the patterns after the expiration of the contract, was not a condition precedent to the payment by the defendants for the stoves they had received. The payment for the stoves was in no sense the consideration for the redelivery of the patterns. The agreement to redeliver the patterns was an independent agreement, for the non-performance of which the defendants may have an ample remedy.

The motion to set aside the report is denied.

